UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CARLTON D. MALONE, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 2:14-cv-331-JMS-DKL |
| | ) | |
| CITY OF TERRE HAUTE, *et al.*, | ) | |
| *Defendants.* | ) | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Presently pending before the Court is Defendant City of Terre Haute (the "City") and Defendant Mayor Duke Bennett's ("Mayor Bennett") (collectively, "Defendants") Motion for Summary Judgment. [Filing No. 23.] Defendants ask this Court to enter summary judgment in their favor on all of *pro se* Plaintiff Carlton D. Malone's employment discrimination claims. [Filing No. 24.] Mr. Malone opposes the pending motion. [Filing No. 31.] For the following reasons, the Court grants Defendants' motion and enters summary judgment in favor of Defendants on all of Mr. Malone's claims.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(a). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P.

56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.,* 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.,* 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.,* 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller,* 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.,* 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially

relevant to the summary judgment motion before them," *Johnson,* 325 F.3d at 898.  Any doubt as

to the existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE*

*Pension Plan,* 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The following factual background is drawn from the admissible evidence presented by the

parties.  The following facts are supported by admissible evidence and presented in a light most

favorable to Mr. Malone, the non-movant.[1]

Mr. Malone is African-American and above the age of 40.  He worked for the City as an

assistant manager of transit utility from October 1998 until March 2001.  [Filing No. 25-2 at 4.]

On February 24, 2000, the City Attorney notified the Indiana Equal Employment Opportunity

Commission that it had received two charges of discrimination from Mr. Malone, dated February

2, 2000, and February 14, 2000.  [Filing No. 31-4 at 1.]  There is no designated evidence regarding

the result of these charges.

On May 10, 2005, Mr. Malone filed a complaint with the Indiana Civil Rights Commission,

alleging that the City had unlawfully discriminated against him in retaliation for his previous filing

of a complaint with the Indiana Civil Rights Commission.  [Filing No. 31-5 at 1.]  There is no

designated evidence regarding the result of this complaint.

---

[1] In his response brief, Mr. Malone generally objects to certain facts the City presents in its opening
brief, arguing that "[f]acts not supported by admissible evidence."  [Filing No. 31 at 5.]  Mr.
Malone does not detail why he believes that any evidence submitted by the City, including
affidavits from City employees, is not admissible.  The Court finds Mr. Malone's general
objections waived because he has not sufficiently explained any basis for them.  *See* Fed. R. Evid.
103(a)(1)(B) (requiring that an objecting party "state[] the specific ground" for an objection);
*Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1149-50 (7th Cir. 1989) (rules of evidence apply on
summary judgment).

Sometime in 2007 or 2008, Mr. Malone began speaking with Mayor Bennett about employment opportunities with the City.  [Filing No. 25-4 at 20.]  In 2009, Mayor Bennett agreed to serve as a reference for Mr. Malone.  [Filing No. 25-4 at 5-9.]

Mr. Malone attests that on August 13, 2013, he filed a complaint with the Department of Justice Civil Rights Division against several parties, including both Defendants.  [Filing No. 25-4 at 10-13.]  According to Mr. Malone, he was seeking relief from "a retaliation and a blackballing" from "employment due to [his] protected activities."  [Filing No. 25-4 at 11.]  The Office of Civil Rights ultimately closed the matter for lack of jurisdiction, and there is no evidence that the Defendants were ever notified about Mr. Malone's complaint.  [Filing No. 25-4 at 10-13.]

On March 9, 2014, Mr. Malone submitted an employment application to the City for two positions:  Director of Recreation and grass cutter.  [Filing No. 25-1 at 1; Filing No. 25-2 at 1-4.]  The City's failure to hire him for either of those positions is at issue in this litigation.  In his application, Mr. Malone represented that he was unemployed and that he would be able to immediately begin employment.  [Filing No. 25-2 at 1.]  The application listed Mayor Bennett as a reference, identifying him as a "community relationship."  [Filing No. 25-2 at 1.]  In response to a question about previous employment, Mr. Malone provided the following information:



[Filing No. 25-2 at 2.]  Mr. Malone's race and age were not asked for or disclosed on the employment application.  [Filing No. 25-2 at 1-3.]

The "Position Description" for the Director of Recreation position included certain "Minimum Qualifications," including "Education/Training:  Bachelors Degree preferable in a recreation or business related field."  [Filing No. 25-3 at 2.]  Sherri Kellett was the City's Benefits

Administrator and Acting Human Resources Director at the time Mr. Malone submitted his employment application for the Director of Recreation and Grass Cutter positions. [Filing No. 25-1 at 1.]   She attests that the Director of Recreation position included certain minimum qualifications, such as "Bachelor's Degree in recreation or business related field." [Filing No. 25-1 at 1.]  It is undisputed that Mr. Malone does not have an associates or a bachelor's degree. [Filing No. 25-4 at 4.]

Ms. Kellett reviewed the applications received for the Director of Recreation position and selected the applications that she believed met the minimum qualification requirements to forward to Eddie Bird, the Parks and Recreation Superintendent. [Filing No. 25-1 at 2.]  Ms. Kellett "did not forward Mr. Malone's application to Mr. Bird because it did not meet the minimum qualifications for the position." [Filing No. 25-1 at 2.]

Ms. Kellett attests that grass cutting positions are usually not posted until April or May and that when Mr. Malone submitted his application on March 9, 2014, "there was not a grass cutting position available." [Filing No. 25-1 at 2.]  When a grass cutting position was "open and posted," Ms. Kellett would forward applications she received to Billy Hubbard, Director of Safety and Operations for Parks and Cemeteries. [Filing No. 25-1 at 2.]  Mr. Hubbard would review the applications and decide which applicants to hire. [Filing No. 25-1 at 2.]  Ms. Kellett attests that if an applicant applied for a grass cutting position before one was open

> those applications were usually placed in a folder to be kept until a position was open.  Once a position was available, [she] typically would forward on the applications received *after* the position posted before using applications in the folder that were submitted in previous months.  The reason for this is because grass cutting is a part-time, seasonal position, and it is more likely that the applicants applying at the time the position is posted are still interested, as opposed to applications received months earlier.

[Filing No. 25-1 at 2.]

On April 7, 2014, Mr. Hubbard posted a press release regarding ten seasonal grass cutting positions.  [Filing No. 25-5 at 1; Filing No. 25-6.]  Ms. Kellett has no record showing whether Mr. Malone's application for grass cutting was forwarded to Mr. Hubbard.  [Filing No. 25-1 at 2.] Because the City did not hire any individuals who applied for the position prior to April 8, 2014, Ms. Kellett believes that she did not forward any grass cutter applications to Mr. Hubbard that were received before the job was posted.  [Filing No. 25-1 at 2.]  Mr. Hubbard did not conduct interviews for the grass cutting positions, and ultimately hired five individuals over the age of 40 and three African-American individuals.  [Filing No. 25-5 at 2.]  Mayor Bennett knew that Mr. Malone had applied for a grass cutting position after the two met at City Hall, [Filing No. 25-4 at 8], but Mayor Bennett was not involved in the process of selecting the applicants for the grass cutting positions, and Mr. Hubbard did not discuss the applications that he received with Mayor Bennett, [Filing No. 25-5 at 2].

Neither Ms. Kellett nor Mr. Hubbard knew Mr. Malone prior to this lawsuit, and they did not know his race, age, or any previous claims he had involving the City at the time the decisions at issue herein were made.  [Filing No. 25-1 at 2-3; Filing No. 25-5 at 2.]  Mayor Bennett was not involved in the hiring process for the positions at issue.  [Filing No. 25-1 at 3.]  Because many applications list Mayor Bennett as a reference, pursuant to Mayor Bennett's general directive, Ms. Kellett did not follow-up with Mayor Bennett about Mr. Malone's application because "Mayor Bennett's position is that we should hire the most qualified applicant for the position."  [Filing No. 25-1 at 3.]

Mr. Malone filed this action against the City and Mayor Bennett in October 2014, alleging various legal claims based on the failure to hire him.  [Filing No. 1.]  His action was screened pursuant to 28 U.S.C. § 1915(e)(2)(B), and the Court allowed the following claims to proceed:

- · Mr. Malone's claim for retaliation against the City;

- · Mr. Malone's claim for retaliation against Mayor Bennett;

- · Mr. Malone's claim for race discrimination against the City; and

- · Mr. Malone's claim for age discrimination under the ADEA against the City.

[Filing No. 4 at 3.] Defendants have moved for summary judgment on all of these claims, [Filing No. 23], and Mr. Malone opposes the pending motion, [Filing No. 31].

## III.
### DISCUSSION

Mr. Malone's claims allege employment discrimination based on various theories—retaliation, race discrimination, and age discrimination. [Filing No. 4 at 3.] In their opening brief, Defendants address each of Mr. Malone's claims separately. [Filing No. 24 at 8-28.] Mr. Malone responds to Defendants' arguments collectively, generally arguing why he does not believe that summary judgment should be granted in favor of Defendants. [Filing No. 31.] In reply, Defendants collectively address Mr. Malone's arguments and, accordingly, abandon their initial strategy to separately brief each claim. [Filing No. 33.] Because all of Mr. Malone's claims are based on theories of employment discrimination, the Court will collectively address the generally applicable legal principles before separately addressing Mr. Malone's claims.

### A. Applicable Legal Principles

Title VII of the Civil Rights Act of 1964 forbids an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009) (citing 42 U.S.C. § 2000e–2(a)(1)). It also prohibits an employer from discriminating "against any . . . applicants for employment . . . because [an applicant] has opposed any practice made an unlawful employment practice by [Title VII], or

because [the applicant] has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under [Title VII]." *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001) (citing 42 U.S.C. § 2000e-3(a)).  The Age Discrimination in Employment Act ("ADEA") prohibits taking adverse employment actions against workers 40 or older based on age. 29 U.S.C. § 623(a)(1); *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014).

A plaintiff may prove claims of age discrimination, race discrimination, or retaliation under either the direct or indirect method of proof.  *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1157 (7th Cir. 2014) (age discrimination); *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009) (race discrimination); *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1068 (7th Cir. 2012) (retaliation).  The parties in this case focus almost exclusively on the indirect method of proof, and the Court will do the same.[2]

To indirectly prove illegal discrimination, a plaintiff may rely on the *McDonnell Douglas* burden-shifting method of proof.  *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  To make a *prima facie* case for retaliation, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the adverse action and the protected activity.  *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir. 1998).  Once a plaintiff does this, the burden "then shifts to the defendant to articulate a

---

[2] The direct method requires "evidence of animus—the so-called 'smoking gun.'" *Van Antwerp v. City of Peoria*, 627 F.3d 295, 298 (7th Cir. 2010).  Even circumstantial evidence must "point directly to a discriminatory reason for the employer's action." *Grigsby v. Lahood*, 628 F.3d 354, 358 (7th Cir. 2010).  The only allegedly direct evidence of discrimination to which Mr. Malone points is that his daughter was denied the opportunity to participate in a summer program for youth run by a private company that leases space from the City.  [Filing No. 31 at 7.]  Mr. Malone admitted in his deposition that he has no evidence that anyone from the City contacted the program. [Filing No. 25-4 at 15.]  This evidence is not relevant to Mr. Malone's employment discrimination claims because it does not point directly to a discriminatory reason why the City did not hire him.

8

legitimate, nondiscriminatory reason for its employment decision.  If the employer satisfies its burden, the burden shifts back to the plaintiff to prove that the proffered reason was pretextual." *Walker*, 241 F.3d at 889.  "A plaintiff can establish pretext with evidence suggesting that retaliation was the most likely motive for the failure to hire, or by showing that the defendant's proffered reason was not worthy of belief."  *Id.*  The Court may proceed to the dispositive issue of pretext without deciding whether the plaintiff established a *prima facie* case.  *Id.*

To make a *prima facie* case of race or age discrimination, a failure-to-hire plaintiff must establish that "(1) he is a member of a protected class; (2) he applied for and was qualified for an open position; (3) despite his qualifications, he was rejected for the position; and (4) a similarly situated person outside his protected class was hired for the position instead, or the position remained open."  *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015) (plaintiff alleging race and age discrimination in failure-to-hire context).  If a plaintiff can establish a *prima facie* case, then the defendant must present evidence demonstrating a legitimate, nondiscriminatory reason for not hiring the plaintiff for the position.  *Id.*  If it does so, the plaintiff must then present evidence that the stated reason for not hiring him was pretext.  *Id.* (citing *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 675 (7th Cir. 2003)).  Pretext is defined as "'a dishonest explanation, a lie rather than an oddity or an error.'"  *Sweatt*, 796 F.3d at 709 (citing *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002)).  To establish pretext, the plaintiff must show either that the employer was motivated by a discriminatory reason or that the proffered reason is unworthy of credence.  *Zaccagnini*, 338 F.3d at 675-76.  An employer's changed reasoning or failure to proffer an explanation when given an opportunity to do so can be evidence of pretext.  *Id.*

**B. Retaliation Claims**

*1) The City*

The City moves for summary judgment in its favor on Mr. Malone's retaliation claim against it.  [Filing No. 24 at 8-13.]  The City emphasizes that Mr. Malone has no evidence that he was not hired for the two positions at issue in retaliation for engaging in statutorily protected activity.  [Filing No. 24 at 11.]  Even assuming that Mr. Malone can establish a *prima facie* case of retaliation, the City argues that his claim fails because he has no evidence that the City's reasons for failing to hire him were pretext.  [Filing No. 24 at 9-10.]  The City emphasizes Ms. Kellett's attestation that she did not have any knowledge about Mr. Malone's age, race, or prior statutorily protected activities before this lawsuit.  [Filing No. 24 at 12.]

In response, Mr. Malone claims that Ms. Kellett had knowledge of Mr. Malone's statutorily protected activity because his application disclosed that he left a previous job at "City of T.H. EEOC Regulations."  [Filing No. 31 at 6 (citing Filing No. 25-2 at 2).]

In reply, the City points out that there is no evidence that Ms. Kellett saw the portion of Mr. Malone's application that references that he left his previous job with the City because of "EEOC Regulations."  [Filing No. 33 at 5.]

The parties do not dispute that Mr. Malone engaged in statutorily protected activity for which he could not be retaliated against or that he suffered an adverse employment action because he was not hired for the positions for which he applied.  The parties do dispute, however, whether Ms. Kellett had knowledge of Mr. Malone's statutorily protected activities at the time he applied for the positions at issue.  She attests that she did not, [Filing No. 25-1 at 3], but Mr. Malone points to the section of his job application where he disclosed that he left a previous job at "City of T.H." and vaguely references "EEOC Regulations" as the reason, [Filing No. 25-2 at 2].  Even making a

substantial inference in favor of Mr. Malone and assuming that Ms. Kellett discerned from the vague disclosure on his application that he had engaged in statutorily protected employment activity, Mr. Malone's retaliation claim still fails as a matter of law. Specifically, even if Mr. Malone's best evidence sets forth a *prima facie* case of retaliation, which the Court doubts, he has put forth no evidence that the City's stated reason for not hiring him for either position was merely pretext. The Court will separately address each of the two positions for which he applied.

With regard to the Director of Recreation position, the City's reason for not hiring Mr. Malone was that he was not qualified because he did not possess a bachelor's degree. [Filing No. 25-1 at 2.] Mr. Malone does not dispute that he does not have a bachelor's degree. Instead, he argues that a bachelor's degree was not actually a requirement for the position because the job posting stated that a bachelor's degree was "preferable." [Filing No. 31 at 3 (citing Filing No. 25-3 at 2) (listing "Minimum Qualifications: . . . Bachelors Degree preferable in a recreation or business related field").] Even if the job posting were ambiguous, the undisputed evidence is that Ms. Kellett interpreted it to mean that an applicant had to possess a bachelor's degree and that she did not give any applications to the decision maker that did not meet that requirement. [Filing No. 25-1 at 2.] Mr. Malone has designated no evidence that Ms. Kellett's reasonable interpretation of the minimum requirements for the Director of Recreation position was pretext. Instead, the undisputed evidence is that the individual hired for the position had a bachelor's degree in recreation and sport management from Indiana State University. [Filing No. 25-7.] Because Mr. Malone has presented no evidence of pretext, the Court grants summary judgment in favor of the City on his retaliation claim regarding the Director of Recreation position.

With regard to the grass cutter position, the City's reason for not hiring Mr. Malone was that there was not an open position when he applied. [Filing No. 25-1 at 2-3.] Mr. Malone does

not dispute that there was not an open grass cutter position when he applied, and the undisputed

evidence shows that all of the people hired for the grass cutter position applied for it after the date

it was posted.  [Filing No. 25-1 at 2.]  Because Mr. Malone has presented no evidence that the

City's proffered reason for not hiring him was pretext, the Court grants summary judgment in

favor of the City on his retaliation claim regarding the grass cutter position.

>            *2) Mayor Bennett*

Mr. Malone makes a retaliation claim against Mayor Bennett pursuant to 42 U.S.C. § 1983,

[Filing No. 4 at 3], but the parties do not spend as much time briefing this claim.  The City argues

that Mr. Malone's claim against Mayor Bennett fails because Mr. Bennett was not involved in

hiring for the positions at issue.  [Filing No. 24 at 14-18.]  Although Mr. Malone does not dispute

that there is no evidence supporting Mayor Bennett's involvement in hiring these positions, he

emphasizes that Mayor Bennett knew that Mr. Malone applied for the grass cutter position because

of a conversation they had in City Hall.  [Filing No. 31 at 6.]

Individual liability under § 1983 requires personal involvement with the alleged

deprivation.  *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010).  To be personally liable, a

supervisor "must have condoned or acquiesced in a subordinate's unconstitutional treatment" of

the plaintiff.  *Id.*; *see also O'Shell v. Cline*, 571 F. App'x 487, 491-92 (7th Cir. 2014) (an allegation

of supervisory authority "is insufficient to raise a plausible inference that [defendant] personally

intervened to deny [plaintiff] employment at every turn, and § 1983 does not permit vicarious

liability").

Ms. Kellett attests that despite Mr. Malone listing Mayor Bennett as a reference on his

application, she did not follow up with Mayor Bennett because "[t]his is a very common

occurrence on job applications" and Mayor Bennett's position "is that we should hire the most

qualified applicant for the position." [Filing No. 25-1 at 3.] Ms. Kellett attests that Mayor Bennett was not involved in the hiring process for the Director of Recreation position and that he did not have any involvement in the receiving or processing of Mr. Malone's applications. [Filing No. 25-1 at 3.] Mr. Hubbard attests that Mayor Bennett was not involved in hiring for the grass cutter positions and that Mr. Hubbard did not discuss the applications he received with Mayor Bennett. [Filing No. 25-5 at 2.]

In his deposition, Mr. Malone confirmed that he does not know whether anyone reached out to Mayor Bennett after Mr. Malone listed him as a reference on his application. [Filing No. 25-4 at 7.] Mr. Malone stated that he has no knowledge that Mayor Bennett was involved in hiring for either the Director of Recreation position or the grass cutter position. [Filing No. 25-4 at 22.] Mr. Malone also testified that he has no knowledge that Mayor Bennett interfered with his applications for these positions in any way. [Filing No. 25-4 at 23.]

It is well-established that summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson*, 325 F.3d at 901. Regardless of whether Mayor Bennett knew that Mr. Malone had applied for either position, the undisputed designated evidence of record is that Mayor Bennett was not involved in the hiring process for either the Director of Recreation position or the grass cutter position and that he did not interfere in any way with Mr. Malone's application. Thus, the Court will enter summary judgment in favor of Mayor Bennett on Mr. Malone's retaliation claim.

## C. Race and Age Discrimination Claims

Mr. Malone's remaining claims are against the City for race and age discrimination. [Filing No. 4 at 3.] The City moves for summary judgment on both of these claims, arguing that Mr.

Malone cannot make a *prima facie* case of race or age discrimination and that even if he could, there is no evidence that the City's reasons for not hiring him were pretext.  [Filing No. 24 at 19-25 (race discrimination claim); Filing No. 24 at 25-28 (age discrimination claim).]   The City advances many of the same arguments that it did when moving for summary judgment on Mr. Malone's retaliation claim.  [Filing No. 24 at 19-25 (race discrimination claim); Filing No. 24 at 25-28 (age discrimination claim).]

In response, Mr. Malone contends that the City's stated reasons for not hiring him were pretext and should not be believed.  [Filing No. 31 at 4-5 (arguing that the City is hiding its "bias and discrimination against plaintiff" because he was allegedly qualified for the Director of Recreation position and all applications for the grass cutter position should have been considered).]

In reply, the City points out that it has provided evidentiary support for its positions and that Mr. Malone relies on unsupported allegations of discrimination.  [Filing No. 33 at 4-5.]

As set forth above, to make a *prima facie* case of race or age discrimination, a failure-to-hire plaintiff must establish that "(1) he is a member of a protected class; (2) he applied for and was qualified for an open position; (3) despite his qualifications, he was rejected for the position; and (4) a similarly situated person outside his protected class was hired for the position instead, or the position remained open."   *Sweatt*, 796 F.3d at 709 (plaintiff alleging race and age discrimination in failure-to-hire context).

The Court finds that Mr. Malone has not made a *prima facie* case of race or age discrimination.  As an initial matter, there is no evidence that the City employees making the decisions at issue were aware of Mr. Malone's race or age.  It is undisputed that Mr. Malone's race and age were not asked for or disclosed on the employment application.  [Filing No. 25-2 at 1-3.]  Ms. Kellett and Mr. Hubbard both attest that they did not know Mr. Malone's race or age at the

14

time of the events at issue.  [Filing No. 25-1 at 3; Filing No. 25-5 at 2.]  Mr. Malone does not

dispute this in his response brief; he only points out that his application listed his protected

employment activities.  [Filing No. 31 at 5.]  Given that the undisputed evidence is that neither

Ms. Kellett nor Mr. Hubbard knew Mr. Malone's race or age during the relevant time period, the

City is entitled to summary judgment on Mr. Malone's race and age discrimination claims.

*Matthews v. Waukesha Cty.*, 759 F.3d 821, 827 (7th Cir. 2014) (affirming decision to grant

summary judgment because "Matthews admitted as undisputed that Page did not know the race of

the applicants and that is dispositive here").

Even assuming for the sake of the argument that any of the decision makers involved in

hiring for the Director of Recreation or grass cutter positions did know Mr. Malone's race and age,

the City is still entitled to summary judgment.  With regard to the Director of Recreation position,

the undisputed evidence is that Ms. Kellett did not believe Mr. Malone met the minimum

qualifications because he did not have a bachelor's degree.  [Filing No. 25-1 at 2.]  Because he did

not meet the minimum qualifications for the open position, he has not made a *prima facie* case of

race or age discrimination.  Although Mr. Malone contends that a bachelor's degree was not a

minimum qualification for the position, even assuming that he makes a *prima facie* case of race or

age discrimination, he has presented no evidence that the City's reason for not hiring him was

pretext.  Instead, the undisputed evidence is that the applications of the individuals who did not

possess a bachelor's degree were not forwarded to the decision maker and that the individual

ultimately hired for the position had a bachelor's degree in recreation and sport management from

Indiana State University.  [Filing No. 25-7.]  Because Mr. Malone has presented no evidence of

pretext, the Court grants summary judgment in favor of the City on Mr. Malone's race and age

discrimination claims regarding the Director of Recreation position.

With regard to the grass cutting position, Mr. Malone has not made a *prima facie* case of race or age discrimination because there was not an open position when he applied. *Sweatt*, 796 F.3d at 709 (second element of *prima facie* case is that plaintiff "applied for and was qualified for *an open position*") (emphasis added). Mr. Malone also cannot meet the fourth requirement of a *prima facie* case because multiple members of both of his protected classes were hired for the grass cutter position. [Filing No. 25-5 (attesting that five individuals over the age of 40 and three African-Americans were hired for the open grass cutting positions).] Finally, even if the Court assumes that Mr. Malone makes a *prima facie* case of race and age discrimination—which he does not—he has presented no evidence whatsoever that the City's stated reason for not hiring him was pretext. It is undisputed that there was not an open grass cutter position when he applied, and all of the individuals ultimately hired for the position applied after the date the position was posted. [Filing No. 25-1 at 2.] Thus, for all of these reasons, the Court grants summary judgment in favor of the City on Mr. Malone's race and age discrimination claims regarding the grass cutter position.

## IV.
### CONCLUSION

For the reasons set forth herein, the Court **GRANTS** Defendants' Motion for Summary Judgment. [Filing No. 23.] Final judgment in favor of Defendants shall issue accordingly.

Date: 12/15/2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via U.S. Mail:**

CARLTON D. MALONE
2390 7th Ave.
Terre Haute, IN 47803

**Distribution via CM/ECF:**

Holly A Reedy
WILKINSON GOELLER MODESITT WILKINSON & DRUMMY
hareedy@wilkinsonlaw.com

William W. Drummy
WILKINSON GOELLER MODESITT WILKINSON & DRUMMY
wwdrummy@wilkinsonlaw.com